## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DC KINCARE ALLIANCE, | ) | |
| 1101 Connecticut Avenue Northwest | ) | |
| Suite 450 | ) | |
| Washington, D.C. 20036 | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| v. | ) | Case No. __ : _____ |
| | ) | Judge _____ __ . _____ |
| DISTRICT OF COLUMBIA HOUSING | ) | |
| AUTHORITY, | ) | |
| c/o Brenda Donald, Executive Director | ) | |
| 1133 North Capitol Street Northeast | ) | |
| Washington, D.C. 20002 | ) | |
| | ) | |
| *Defendant*. | ) | |

## COMPLAINT

Plaintiff DC KinCare Alliance ("Plaintiff" or "KinCare"), by its undersigned attorneys, brings this action against Defendant District of Columbia Housing Authority ("Defendant" or "DCHA") for engaging in a pattern and practice of familial status discrimination that violates the federal Fair Housing Act, 42 U.S.C. §§ 3601 *et seq*, District of Columbia Human Rights Act ("DCHRA"), and Equal Protection Clause, U.S. Const. amend. XIV, § 1, invoked pursuant to 42 U.S.C. § 1983. In support of its claims, the Plaintiff states as follows:

## INTRODUCTION

1.      The District of Columbia faces an affordable housing crisis, with approximately 45.5% of renters spending at least 30% of their household income on rent.  Approximately 11.3% of families and 22.8% of children in the District of Columbia live below the poverty line. DC Health Matters, *Renters Spending 30% or More of Household Income on Rent*, April 2022, https://www.dchealthmatters.org/?module=indicators&controller=index&action=view&comparis onId=&indicatorId=393&localeTypeId=10&localeId=130951.   Providing  access  to  safe  and

affordable housing options, through the Defendant's programs and services, is central and critical to the District's principal strategy for combating homelessness.

2.       Defendant provides housing assistance through its Housing Choice Voucher Program (HCVP), public housing program ("Public Housing Program"), and moderate rehabilitation program to many of the District's most vulnerable residents.  Participants in the HCVP use rent subsidies to obtain housing in private residences across the District, whereas participants in the Public Housing Program live in one of the 56 housing properties the Defendant owns and manages in the District.  District of Columbia Housing Authority, *Customers* (https://webserver1.dchousing.org/?page_id=284).  Approximately 13,000 families in the District receive housing assistance through the HCVP.  Another 40,000 people are on the waitlist for a housing voucher, many waiting years.  The housing voucher waitlist has been closed since 2013 because of the extremely high number of applications.  As such, no new applications have been accepted in nearly 10 years, and there is "no scheduled time to re-open the waitlist." *Id*.

3.       HCVP and Public Housing Program participants must inform Defendant in advance of any anticipated changes to their household composition.  Defendant treats HCVP participants differently than Public Housing Program participants when the participants in each program attempt to add children to their households.  Defendant lacks any valid justification for applying two different standards to participants in their separate housing assistance programs.  As a result of the unduly restrictive regulations imposed upon HCVP participants, Defendant requires non-parental custodial caregivers who seek to add minor family members to their household to obtain a court-awarded permanent custody order even though the same request could be granted for a Public Housing Program participant without such an order.

4.      When an HCVP-participating non-parental custodial caregiver's request to add a minor child to their voucher is denied by Defendant, the caregiver is faced with an impossible decision.  The caregiver either must to stop caring for the minor child over whom he/she has been entrusted with custody, file for and obtain a custody order, or disregard Defendant's denial and risk Defendant's imposition of penalties, including – potentially – the loss of his/her housing voucher.

5.      Plaintiff's limited resources as a nonprofit legal services organization are being expended counseling caregivers and advocating on their behalf as a result of Defendant's wholly unwarranted pattern and practice of discriminating against caregivers seeking to raise the District's most vulnerable and at-risk children whose parents are otherwise unable to care for them, with the outcome dependent entirely upon whether they are subject to the rules governing the HCVP or the Public House Programs.

6.      By failing to apply consistent rules and procedures to all families seeking assistance under the District's housing assistance programs, Defendant denies affected individuals equal access to use and enjoy essential housing services and discriminates against them based on their familial status.  Plaintiff seeks declaratory and injunctive relief, and attorneys' fees.

## JURISDICTION AND VENUE

7.      The Court has subject-matter jurisdiction of Plaintiff's claims arising under the federal Fair Housing Act and 42 U.S.C. § 1983 with respect to the Equal Protection Clause of the U.S. Constitution pursuant to 28 U.S.C. § 1331.  It has supplemental jurisdiction of Plaintiff's claim arising under the DCHRA pursuant to 28 U.S.C. § 1367.  It is authorized to grant declaratory relief and order appropriate remedies pursuant to 28 U.S.C. §§ 2201, 2202.

8.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because the Defendant's acts and omissions giving rise to Plaintiff's claims asserted in this action occurred within this judicial district.

## PARTIES

9.      Plaintiff is a nonprofit legal services organization, organized and existing under the laws of the District of Columbia, with a principal place of business at 1101 Connecticut Avenue, Northwest, Suite 450, Washington, D.C. 20036.  Plaintiff supports the legal, financial, and related service needs of non-parental custodial caregivers who agree to raise children within the scope of their families in times of crisis when the children's biological parents are not able to care for them due to mental health and substance use disorders, incarceration, death, abuse and neglect, or deportation.  Plaintiff is the only organization in Washington, D.C. focused solely on serving non-parental custodial caregivers raising at-risk children in the local community.

10.      Defendant is an independent authority of the District of Columbia government that maintains a principal place of business at 1133 North Capitol Street, Northeast, Washington, D.C. 20002. Defendant was established in 1995 and maintains a corporate body with a legal existence separate from the District of Columbia government.  *See* D.C. Code § 6-202(a) ("[Defendant] shall be a corporate body, intended, created, and empowered to effectuate the purposes stated in this chapter, and shall have legal existence separate from the District government.").  Defendant's stated mission is to provide quality affordable housing to extremely low- through moderate-income households, foster sustainable communities, and cultivate opportunities for residents to improve their lives.  Defendant serves approximately 50,000 residents in the District of Columbia and manages more than 8,000 housing units across 56 traditional public housing developments. Defendant is a "person" for purposes of 42 U.S.C. § 1983, and the pattern and practice of unlawful

conduct in which it has engaged as alleged herein constitutes action under color of District of Columbia law.

## **LEGAL FRAMEWORK**

11.     The HCVP provides rent subsidies to low-income individuals. 42 U.S.C. § 1437(f). Voucher holders use their voucher to pay for housing they find in the private market, so long as the rent does not exceed certain limitations and minimum standards of health and safety are met. Voucher holders pay 30% of their household income towards the rent and Defendant pays the outstanding balance directly to the landlord.  District of Columbia Housing Authority, *Customers* (https://webserver1.dchousing.org/?page_id=284).

12.     Participants in the HCVP must keep Defendant abreast of any changes to their household composition. Participants must request and obtain Defendant's approval to add a child, "with the exception of the addition of a Family member as a result of birth, adoption, foster placement or court-awarded custody."  14 D.C.M.R. § 5316.1.  Pursuant to a letter to Plaintiff dated June 8, 2022 from DCHA Executive Director Brenda Donald, Defendant made clear that HCVP participants are not permitted to add minor children to the household unless the child is in one of the afore-mentioned categories.  While Ms. Donald interprets, without any identified legal basis, the term "court-awarded custody" to mean emergency, temporary or permanent custody, all of Plaintiff's HCVP clients have reported that their DCHA caseworkers have advised them that a *permanent* custody order is required.  This is consistent with Plaintiff's recent experiences with DCHA caseworkers when it has contacted them on its clients' behalf.

13.     While participants in the Public Housing Program must also notify Defendant of any changes to their household composition, Defendant's standard for approval regarding additions of children is more lenient than that applicable to HCVP participants.  Families in the Public Housing Program, apart from a court-issued custody order, may also establish familial

status via a "notarized authorization from the child's legal guardian, school or medical records, public benefit records, and sworn statements from medical, legal, social service professionals, teachers or clergy". *Id*. at § 6117.4.

14.     It is unlawful under the federal Fair Housing Act to discriminate against any person based on their familial status in connection with the terms, conditions, or privileges of the rental of a dwelling. *See* 42 U.S.C. § 3604(b). "Familial status" is defined as "one or more individuals (who have not attained the age of 18 years) being domiciled with (1) a parent or another person having legal custody of such individual or individuals; or (2) the designee of such parent or other person having such custody with the written permission of such parent or other person." 42 U.S.C. § 3602(k). Individuals who are in the process of securing legal custody of a minor child are granted the same protections as if they had already secured legal custody. *Id*.

15.     Under the DCHRA, it is "an unlawful discriminatory practice," D.C. Code § 2-1402.21(a), "to require different terms" and include "any clause, condition or restriction" in connection with a transaction because of a person's familial status. D.C. Code § 2-1402.21(a)(1-2). DCHRA's "familial status" definition mirrors that of the federal Fair Housing Act. D.C. Code § 2-1401.02(11A).

16.     Defendant's own regulations expressly require that it fully comply with the federal Fair Housing Act and the DCHRA and not discriminate on the basis of, among other things, familial status. 14 DCMR §§ 4906.1-4906.2.

17.     The Equal Protection clause of the Fourteenth Amendment guarantees persons equal protection and equal application of the laws unless there are constitutionally permissible justifications for any disparities. U.S. CONST. AMEND XIV, § 1; *Plyler v. Doe*, 457 U.S. 202, 216-21 (1982).

18.     Courts determine whether an organization has standing to sue – for itself or on behalf of those for whom it acts – by conducting the same inquiry as in the case of an individual: has the plaintiff alleged such a personal stake in the outcome of the controversy as to warrant its invocation of federal court jurisdiction?  *Havens Realty Corp. v. Coleman*, 455 US 363, 379 (1982).

## RELEVANT FACTS

### Plaintiff Has a Personal Stake in the Outcome of this Controversy.

19.     Plaintiff provides legal representation, resources, counseling, and education to non-parental custodial caregivers, as well as identifying, assisting with obtaining, and advocating for, effective medical and mental health care, substance use treatment, financial supports, and other support services for the whole family.

20.     Plaintiff has devoted substantial time and resources to counseling clients and assisting them to try to advocate for adding minor children to their households subject to HCVP vouchers by writing letters to and speaking with Defendant's caseworkers about specific cases. Plaintiff has also devoted additional resources to assisting caregivers through the custody process even though they should not, under a proper application of the law, be required to undertake such proceedings.  Plaintiff has further devoted resources to educating the DC kinship community about their right to add children to their HCVP vouchers by conducting informational sessions with kinship caregivers and community providers.  Plaintiff has also testified before the DC Council about DCHA's discriminatory practices in connection with adding children to kinship caregiver's HCVP vouchers. This counseling, legal representation, education, and advocacy has required Plaintiff to divert resources from other important initiatives and matters to focus on the issues arising from Defendant's unlawful policies and practices.

**Defendant's Disparate Treatment of Plaintiff's Clients Seeking to Modify Household Composition Creates a Burdensome and Unnecessary Barrier for Plaintiff's Clients.**

21.     Plaintiff has received at least a dozen inquiries over the past year and a half from non-parental custodial caregivers participating in the HCVP who have faced the hurdle of obtaining approval from Defendant to add a relative minor child to their household.  The minor children at issue here are all either blood-relatives or godchildren of the caregiver, but they do not share a biological parent-child relationship.  When the caregiver requests a modification to their household composition in accordance with the HCVP's stated rules, they are consistently – and incorrectly – told that they must obtain a *permanent* custody order from the District of Columbia Superior Court as a pre-condition to approval.

22.     On February 7, 2022, Plaintiff sent a letter to Defendant expressing its concerns that Defendant's restrictions on adding minor children to a household of participants in the HCVP violated District of Columbia and federal housing laws.  The letter asserted that, "[b]y requiring non-parent caregivers to provide a permanent custody order to add children to their public housing leases or vouchers, DCHA is violating its own regulations by discriminating against these families on the basis of their familial status.  DCHA must allow such a lessee or voucher-holder to add children to their household if they have filed for custody, have a temporary custody order, have been legally granted permission to have physical custody of the children pursuant to a Custodial Power of Attorney, or have other documentation showing the caregiving relationship."

23.     On June 8, 2022, Defendant's Executive Director responded to Plaintiff's letter. Defendant's letter purported to explain that "D.C. Municipal Regulations delineate what documentation DCHA can accept when processing requests from public housing residents and HCVP participants to add minor children to their respective family compositions when they are non-parent caregivers of these minor children" and included a chart – reproduced below – which

compares the documentation that is deemed sufficient from Defendant's perspective to justify a change in household composition in the Public Housing Program versus the HCVP.

| Family Composition Change | Public Housing 14 DCMR §6117.2 through §6117.4 | Housing Choice Voucher Program 14 DCMR §5316.1 |
|---|---|---|
| Birth | ✓ | ✓ |
| Adoption | ✓ | ✓ |
| Custodial Power of Attorney | ✓ | X |
| Court Ordered Guardianship | ✓ | X |
| Court Ordered Conservatorship | ✓ | X |
| Court Ordered Legal Custody | ✓ | X |
| Court-Awarded Custody | X | ✓ |
| Foster Placement | X | ✓ |
| Medical Records | ✓ | X |
| Public Benefit Records | ✓ | X |
| School Records | ✓ | X |
| Sworn Statements from Medical, Legal, or Social Service Professionals | ✓ | X |

24.    Defendant's letter further asserted that DCHA "ma[kes] this distinction as a failsafe to deter and prevent fraud in the program."  The letter did not provide any evidence or examples of such alleged fraud which might justify this disparate treatment and instead simply stated that, "[s]ince public housing includes on-site management staff, DCHA interacts with residents and can independently verify the change in family composition through those routine interactions where we physically see our residents and their families at the property.  HCVP does not allow that type of interaction by DCHA, and as such, the document requirements are different."  However, Defendant neither provided, nor purported to provide, any explanation to how its policies in this regard can be reconciled with the applicable anti-discrimination provisions of federal and local law.

25.    The non-parental custodial caregivers participating in the HCVP who have been adversely affected by Defendant's position have sought advice from Plaintiff on how to maintain their caregiver status without risking the loss of their voucher.  As a direct result of Plaintiff's advocacy efforts in the past, Plaintiff was able to successfully convince Defendant's previous General Counsel to grant relief for Plaintiff's clients, on a case-by-case basis, who had temporary

custody orders, Custodial Powers of Attorney, or other evidence of the caregiving relationship.  In light of the June 8, 2022 letter, *see supra* ¶ 12, however, it is clear that any such efforts by Plaintiff or caregivers to request that Defendant accept Custodial Powers of Attorney, evidence of filing for custody, or other documentation short of a final custody order will be rejected.

26.     Alternatively, some of Plaintiff's clients have chosen to seek custody of the child through proceedings in the District of Columbia Superior Court even though they would not otherwise have chosen to pursue this option.  This option often fails in achieving its goal because obtaining a custody order is a long, drawn-out process that should not be required if the caregiver has a Custodial Power of Attorney or other documentation confirming the caregiver relationship proceedings, which would be accepted if the applicant were a participant in the Public Housing Program.  There also have been unintended consequences resulting from the unnecessary filing for custody, such as increased tension or disagreement between the caregiver and the child's birth parent(s) if the birth parent(s) never desired or intended for the custodial arrangement to be formalized in this manner.

27.     Finally, for non-parental custodial caregivers who choose to simply keep the minor children in their household after Defendant denies their request, they face the dire possibility of revocation of their voucher and becoming homeless.  As mentioned above, the waitlist to be reapply to the HCVP is no longer open, so these families are effectively barred from receiving assistance under this program indefinitely, simply because they refused to abandon their acquired family members when those children are most in need.

**CLAIMS FOR RELIEF**

**COUNT 1**
**DISCRIMINATION ON THE BASIS OF FAMILIAL STATUS IN VIOLATION OF THE**
**FEDERAL FAIR HOUSING ACT**

28.     Plaintiff incorporates by reference, as though fully restated herein, the allegations set forth in Paragraphs 1 through 27 above.

29.     Defendant, as the administrator of the District's housing assistance programs, is prohibited from discriminating against those it serves on the basis of their familial status under the federal Fair Housing Act, 42 U.S.C. § 3604.  Housing program participants may not face discrimination in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith. *Id*. at § 3604(b).

30.     Over the past year and a half, Defendant has consistently required a court-awarded *permanent* custody order to approve an HCVP participant's request to modify their household composition after establishing a new minor child caregiver relationship.  Moreover, Defendant's July 8, 2022 letter confirmed that only such a custody order would be accepted.  Defendant's regulations do not specifically prevent a Custodial Power of Attorney or evidence of filing for custody from being used as a basis to add a child to the household, but Defendant has arbitrarily determined that no documentation short of a final custody order will be accepted.

31.     As a result, Defendant treats non-parental custodial caregiver families in the HCVP that do not have a court-awarded permanent custody order differently than it treats either: (i) non-parental custodial caregiver families in the HCVP that have obtained such a custody order; or (ii) non-parental custodial caregiver families in the Public Housing Program who are permitted to obtain approval of modifications to their household composition based on other forms of other forms of documentation, without any legal basis for this disparate treatment.

32.     Defendant's persistent and unjustified imposition of a requirement which distinguishes among familial relationships qualifying for household modifications under the HCVP discriminates against certain non-parental custodial caregivers assisted by Plaintiff in violation of 42 U.S.C. § 3604(b).

33.     As a direct and proximate result of Defendant's discriminatory policies and conduct, Plaintiff has suffered injuries in its efforts to provide guidance to and expend resources on behalf of its clients that would be unnecessary if Defendant conformed its actions and decisions to the requirements of applicable law.  It is also clear, based on the July 8, 2022 letter, that Defendant intends to continue its discriminatory practices, which will continue to cause injuries to Plaintiff and its constituents.

34.     For these ongoing violations of the federal Fair Housing Act, Plaintiff seeks declaratory and injunctive relief, and attorneys' fees.

**COUNT 2**
**DISCRIMINATION ON THE BASIS OF FAMILIAL STATUS IN VIOLATION OF THE DISTRICT OF COLUMBIA HUMAN RIGHTS ACT**

35.     Plaintiff incorporates by reference, as though fully restated herein, the allegations set forth in Paragraphs 1 through 27 above.

36.     The DCHRA is a remedial statute that is to be broadly construed and is designed "to secure an end . . . to discrimination" in the District of Columbia on the basis of 21 protected traits, *including familial status*. D.C. Code § 2-1401.01.

37.     The DCHRA declares it "an unlawful discriminatory practice" to "interrupt or terminate, or refuse or fail to initiate or conduct any transaction in real property; or to require different terms for such transaction"; or "[t]o include in the terms or conditions of a transaction in

real property, any clause, condition or restriction," "wholly or partially for a discriminatory reason based on. . . familial status".  D.C. Code §§ 2-1402.21(a)(1)-(2).

38.     Over the past year and a half, Defendant has consistently required a court-awarded *permanent* custody order to approve an HCVP participant's request to modify their household composition after establishing a new relative caregiver relationship.  Moreover, Defendant's July 8, 2022 letter confirmed that only a final custody order would be accepted.  Defendant's regulations do not specifically prevent a Custodial Power of Attorney or evidence of filing for custody from being used as a basis to add a child to the household, but Defendant has arbitrarily determined that no documentation short of a final custody order will be accepted from non-parental custodial caregivers in the HCVP.

39.     As a result, Defendant treats non-parental custodial caregiver families in the HCVP that do not have a court-awarded permanent custody order differently than it treats either: (i) non-parental custodial caregiver families in the HCVP that have obtained such a custody order; or (ii) non-parental custodial caregiver families in the Public Housing Program who are permitted to obtain approval of modifications to their household composition based on other forms of other forms of documentation, without any legal basis for this disparate treatment.

40.     Defendant's persistent and unjustified imposition of limitations on which familial relationships qualify for household modifications under the HCVP discriminates against non-parental custodial caregivers in the HCVP in violation of D.C. Code §§ 2-1402.21(a)(1)-(2).

41.     As a direct and proximate result of Defendant's discriminatory policies and conduct, Plaintiff has suffered injuries in its efforts to provide guidance to and expend resources on behalf of its clients that would be unnecessary if Defendant conformed its actions and decisions to the requirements of applicable law.  It is also clear, based on the July 8, 2022 letter, that

Defendant intends to maintain its discriminatory practices, which will continue to cause injuries to Plaintiff and its constituents.

42.     For these ongoing violations of the DCHRA, Plaintiff seeks declaratory and injunctive relief, and attorneys' fees.

## COUNT 3

## VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT AS APPLIED TO DCHA THROUGH THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT

43.     Plaintiff incorporates by reference, as though fully restated herein, the allegations set forth in Paragraphs 1 through 27 above.

44.     The Equal Protection Clause prohibits the government from engaging in disparate treatment of similarly situated persons that violates due process of law.  U.S. CONST. AMEND XIV, § 1; U.S. CONST. AMEND V; *Bolling v. Sharpe*, 347 U.S. 497 (1954).

45.     The government's disparate treatment of individuals based on their familial status is lawful only if such actions have a rational basis and are supported by a legitimate government interest. *Reynold v. Sims*, 377 U.S. 533 (1964).

46.     Discriminatory actions undertaken by actors such as Defendant under color of D.C. law are actionable pursuant to 42 U.S.C. § 1983.

47.     Defendant's blanket assertion that the significant limitation it has imposed on documentation acceptable to modify household composition under the HCVP *vis-à-vis* the Public Housing Program is justifiable because Defendant is attempting to combat fraud in the HCVP is wholly unsupported.  There is no rational explanation as to why those receiving housing assistance from the Defendant under the HCVP should face more stringent and burdensome rules for adding a child to their household than do similarly situated participants in the Public Housing Program.  Defendant has not identified or offered any evidence that HCVP participants are more

disposed or likely to engage in fraud in seeking to include additional children in their households than are Public Housing Program participants.  Moreover, even if Defendant could show that alleged fraudulent activity was taking place at a higher level in the HCVP as compared to the Public Housing Program, Defendant would still fail to establish how recognizing a final custody order as the only form of documentation sufficient to approve a household modification under the HCPV is the only rational means by which to combat any such problem.  Indeed, school records, benefits records, and sworn statements from medical providers can provide as much if not a better representation of whether the children are actually living in the household.

48.     Defendant's policy and practice to treat similarly situated housing assistance participants in a dissimilar manner lacks any rational basis and thus violates the Equal Protection Clause.

49.     As a direct and proximate result of Defendant's discriminatory policies and conduct, Plaintiff has suffered injuries in provision of guidance to and expenditure of resources on behalf of its clients that would be unnecessary if Defendant conformed its actions to the requirements of applicable law.  It is also clear, based on the July 8, 2022 letter, that Defendant intends to continue its discriminatory practices, which will continue to cause injuries to Plaintiff and its constituents.

50.     For these ongoing violations of the Equal Protection Clause, Plaintiff seeks declaratory and injunctive relief, and attorneys' fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in its favor and grant relief against Defendant as follows:

(a)     Declare that DCHA's policies, customs and practices of (1) requiring a permanent custody order and/or (2) refusing to accept temporary custody orders, Custodial Powers of

Attorney, evidence of filing for custody, or other documentation of the caregiving relationship expressly recognized in the applicable Public Housing Program regulations, discriminates against non-parental custodial caregivers seeking to add minor children to their HCVP households under the federal Fair Housing Act and DCHRA and violates the Equal Protection Clause.

(b)      Permanently enjoin Defendant from requiring non-parental custodial caregivers seeking to add children to their HCVP households to provide permanent custody orders, and require Defendant to accept temporary custody orders, Custodial Powers of Attorney, evidence of filing for custody, and other documentation of the caregiver relationship as sufficient evidence to approve requests for modification of household composition under the DCMR;

(c)      Award Plaintiff its reasonable attorneys' fees and costs incurred in bringing this action; and

(d)      Award all such other and further relief as this Court deems appropriate based on the facts and applicable law and the interests of justice.

## **JURY DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues so triable as a matter of right.

DATED:  September 19, 2022

Respectfully submitted,

Theodore A. Howard, D.C. Bar No. 366984
Lisa M. Rechden, D.C. Bar No. 241587
WILEY REIN LLP
2050 M Street, N.W.
Washington, D.C. 20036
(202) 719-7000
thoward@wiley.law
lrechden@wiley.law

By:   /s/ Theodore A. Howard

Theodore A. Howard

*Attorneys for Plaintiff*